1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| KOHEN DIALLO UHURU, | Case No. 2:19-cv-10449-JVS-KES |
|---|---|
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. 135) |
| JIM BONNIFIELD, et al., | |
| Defendants. | |

**I.**

**BACKGROUND**

Kohen Diallo Uhuru ("Plaintiff"), a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), filed this pro se civil rights action against CDCR staff members at the California Men's Colony ("CMC") in San Luis Obispo over events that occurred in 2017 and 2018.  In the operative Second Amended Complaint ("SAC" at Dkt. 38), Plaintiff alleges that Defendants violated his civil rights by interfering with his practice of his Nubian Hebrew Israelite ("NHI") religion.

In October 2022, the Court entered a Case Management Order directing the

1  parties to file status reports regarding the progress of discovery.  (Dkt. 106.)  In

2  January 2023, Defendants timely filed their report and stated, among other things,

3  that they planned to file a partial motion for summary judgment arguing that

4  Plaintiff failed to exhaust his administrative remedies "within two weeks."  (Dkt.

5  120.)  However, Defendants did not immediately file such a motion.

6      Plaintiff then filed several motions to compel discovery.  (Dkt. 117, 123.)

7  Because the discovery appeared to be related to claims that Defendants planned to

8  challenge as unexhausted, on March 2, 2023, the Court asked Defendants to file a

9  status report stating: (a) whether they still planned to file a motion for summary

10  judgment regarding exhaustion, (b) when they planned to file such a motion, and

11  (c) whether any discovery needed to be completed before they filed such a motion.

12  (Dkt. 124.)  Defendants timely responded by filing a status report (Dkt. 125) and

13  the expected motion for partial summary judgment (Dkt. 126).  The Court denied

14  Plaintiff's motions to compel discovery without prejudice; he may refile the

15  motions after the Court rules on Defendants summary judgment motion, if the

16  discovery he seeks remains relevant.  (Dkt. 127.)

17      On April 14 and 17, 2023, the Court received a packet of filings from

18  Plaintiff (signed by him between March 15 and 30, 2023), which included his

19  opposition to Defendants' motion and his own cross-motion for summary

20  judgment. (Dkt. 128-133.)  On April 24, 2023, the Court also received the present

21  motion from Plaintiff (signed by him on March 21, 2023), which is entitled,

22  "Motion for Permanent Injunction, Including Preliminary Injunction and

23  Temporary Restraining Order Pursuant to Fed. R. Civ. Proc. Rule 65(a)(b)."  (Dkt.

24  135.)

25                                          **II.**

26                              **LEGAL STANDARD**

27      "The same legal standard applies to a motion for a temporary restraining

28  order and a motion for a preliminary injunction."  <u>Henry Schein, Inc. v. Cook</u>, 191

2

1  F. Supp. 3d 1072, 1076 (N.D. Cal. 2016).  The purpose of such orders "is merely to

2  preserve the relative positions of the parties until a trial on the merits can be held."

3  Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  Both are "an

4  extraordinary remedy never awarded as a matter of right."  Winter v. Nat. Res. Def.

5  Council, Inc., 555 U.S. 7, 24 (2008).

6       A party seeking such an order must establish: (1) a likelihood of success on

7  the merits; (2) a likelihood that the moving party will suffer irreparable harm absent

8  a preliminary injunction; (3) that the balance of equities tips in the moving party's

9  favor; and (4) that an injunction is in the public's interest.  Winter v. Natural

10 Resources Defense Council, 555 U.S. 7, 20 (2008); see also Am. Trucking Ass'ns,

11 Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).[1]  A district court

12 is not required to hold an evidentiary hearing before denying a motion seeking a

13 preliminary injunction.  See Kenneally v. Lungren, 967 F.2d 329, 334-35 (9th Cir.

14 1992).

15      There must be "a sufficient nexus between the claims raised in a motion for

16 injunctive relief and the claims set forth in the underlying complaint itself," such

17 that "the preliminary injunction would grant 'relief of the same character as that

18 which may be granted finally.'"  Pac. Radiation Oncology, LLC v. Queen's Med.

19 Ctr., 810 F.3d 631, 636 (9th Cir. 2015) (quoting De Beers Consol. Mines v. United

20 States, 325 U.S. 212, 220 (1945)).  "Absent that relationship or nexus, the district

21 court lacks authority to grant the relief requested."  Id.; see, e.g., Reid v. Engel, No.

22 16-cv-2220, 2017 U.S. Dist. LEXIS 20120, at *12-13, 2017 WL 590247, at *6

23 (E.D. Cal. Feb. 13, 2017) (denying injunction where civil rights plaintiff sought

24 "injunctive relief pertaining to property confiscated following plaintiff's arrest,

25

26      [1] In cases subject to the Prison Litigation Reform Act, such as this one, that
27 law imposes further limitations on courts' power to grant injunctive relief.  See
   generally 18 U.S.C. § 3626(a)(1)-(2).
28

1   wholly unrelated to his claims against the California State Bar and his criminal

2   defense attorney raised in the complaint" and sought "injunctive relief against

3   individuals who are not named as defendants").

**III.**

**ANALYSIS**

6          Plaintiff's motion raises several issues.  First, he complains that he only

7   recently received a copy of the Court's March 2, 2023 order asking Defendants to

8   file a status report about their motion for summary judgment.  (Dkt. 135 at 1-2.)  He

9   alleges that prison officials are "deny[ing] [him] access to the courts" and cites

10  Lewis v. Casey, 518 U.S. 343 (1996).  (Dkt. 135 at 2.)  A claim that prison officials

11  are interfering with a prisoner's legal mail, and therefore impeding his access to

12  courts might, "if proven, justify an order in furtherance of the court's ability to

13  adjudicate a particular case."  Turner v. Sacramento Cnty. Sheriff, No. 09-cv-0117,

14  2010 WL 4237023, at *1, 2010 U.S. Dist. LEXIS 112261, at *3 (E.D. Cal. Oct. 21,

15  2010), report and recommendation adopted, 2010 WL 5317331, 2010 U.S. Dist.

16  LEXIS 134272 (E.D. Cal. Dec. 20, 2010).  Moreover, prisoners have a First

17  Amendment right to send and receive mail.  Witherow v. Paff, 52 F.3d 264, 265

18  (9th Cir. 1995).  However, "in order to state a cognizable claim regarding mail, a

19  plaintiff must show that he suffered some real injury; mere delay in receiving mail

20  does not state a claim."  Medley v. Arpaio, No. 08-cv-086, 2008 WL 3911138, at

21  *2, 2008 U.S. Dist. LEXIS 66935 at *5 (D. Ariz. Aug. 21, 2008) (citing Morgan v.

22  Montanya, 516 F.2d 1367, 1371 (2d Cir. 1975)); see also Casey, 518 U.S. at 351-52

23  (holding that, to show he was denied access to the courts, the plaintiff must show

24  that he suffered an "actual injury" as a result of the defendants' actions); see, e.g.,

25  Kohut v. Robinson, No. 17-2358-MWF-SHK, 2018 WL 6133668, at *3, 2018 U.S.

26  Dist. LEXIS 228733, at *9 (C.D. Cal. Jan. 4, 2018) (denying preliminary injunctive

27  relief to prisoner who sought "access to a photocopier to allow him to prosecute his

28  underlying civil lawsuit," because the "allegations of irreparable harm [were] too

1    speculative at this point to warrant the extraordinary relief by a TRO or a

2    preliminary injunction").

3        Plaintiff has not shown that extraordinary equitable relief is warranted at this

4    time.  In the Court's experience, delays in receiving and sending inmate mail are a

5    normal, if unfortunate, side effect of attempting to litigate a case from prison.

6    Plaintiff was not prejudiced by his belated receipt of the Court's March 2, 2023

7    order, because he has timely responded to Defendants' motion for summary

8    judgment (which remains pending).  In future, he may request any reasonable

9    extensions of time that are necessary to allow him to litigate the case.

10       Second, Plaintiff appears to argue that prison officials are improperly

11    transferring him to mental health "crisis beds" even though he "has never been

12    suicidal in prison" in an attempt to "moot valid, legitimate claims through constant,

13    involuntary transfers…." (Dkt. 135 at 2; see also id. at 4 (listing prisons where he

14    has been housed in the last few years).)  Relatedly, he appears to argue that he is

15    "continuously punished by involuntary isolations for a punitive purposes…." (Id.

16    at 3.)  To the extent Plaintiff is arguing that these transfers are interfering with his

17    ability to litigate this case, he has not shown that he has been prejudiced by the

18    transfers.  To the extent he is attempting to raise a new constitutional claim based

19    on these transfers, this claim is not pled in his Second Amended Complaint.  He is

20    therefore not entitled to preliminary injunctive relief because there is an insufficient

21    nexus to his underlying claims.  See Pac. Radiation Oncology, 810 F.3d at 636.

22       Third, Plaintiff appears to argue that he should be given a "medical

23    classification chrono" for a single cell, in order to practice his NHI religion and

24    because he is "psychologically incapable of … double cell living" or "dorm living."

25    (Dkt. 135 at 2, 4-5.)  He appears to argue this violates his rights under the Free

26    Exercise and Equal Protection Clauses.  (Id. at 5.)  Although Plaintiff previously

27    raised similar claims in his First Amended Complaint, the Court dismissed them

28    with prejudice, finding that Plaintiff had not "alleged sufficient facts to plausibly

1  suggest that [prison officials'] refusal to designate him for single-cell status in

2  accordance with his NHI beliefs was unreasonable or failed to further a compelling

3  government interest." (Dkt. 30 at 37 (final report and recommendation issued on

4  October 27, 2020); Dkt. 32 (order accepting this recommendation on November 2,

5  2020).)[2]  Accordingly, he is not entitled to preliminary injunctive relief on this

6  claim.

**IV.**

**CONCLUSION**

9       For the reasons explained above, Plaintiff's motion for preliminary injunction

10  or temporary restraining order (Dkt. 135) is DENIED.

14  DATED:  April 27, 2023       _____

15                                               JAMES V. SELNA
                                                 UNITED STATES DISTRICT JUDGE

17  Presented by:

19  _____
    KAREN E. SCOTT
20  UNITED STATES MAGISTRATE JUDGE

---

24       [2] Plaintiff's First Amended Complaint alleged, "[W]hen [Plaintiff] first
25  arrived at CMC in 2005, his modus operandi was to kill any sodomite, homosexual,
    etc. placed or forced in a small cell with him because of his [NHI] beliefs... which
26  therefore led to Plaintiff being placed in a administrative segregation with a[n]
27  RVR 115 of wanting to kill an 'unknown inmate'.... [U]pon release from ad-seg at
    CMC-East Plaintiff has always remained in a single cell...." (Dkt. 20 at 17.)
28

6